UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA RENEE CAMILLI, | Case No. 18-cv-06322-JSC |
| Plaintiff, | |
| v. | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| NANCY A. BERRYHILL, | Re: Dkt. Nos. 14 & 15 |
| Defendant. | |

Plaintiff Linda Renee Camilli seeks social security benefits for a combination of mental and physical impairments, including: degenerative disc disease of the lumbar spine, osteoarthritis, obesity, asthma, anxiety and depression. (Administrative Record ("AR") 242-254.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this action for judicial review of the final decision by the Commissioner of Social Security denying her benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 14 & 15.) Because the Administrative Law Judge ("ALJ") improperly weighed the medical opinion evidence and incorrectly rejected Plaintiff's symptom testimony, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for award of benefits.

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 7.)

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.*

**PROCEDURAL HISTORY**

In 2014, Plaintiff first filed for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act, alleging disability beginning on January 8, 2013. (AR 82.) Plaintiff alleges numerous physical and mental conditions, including degenerative disc disease of the

lumbar spine, osteoarthritis, obesity, sleep problems, asthma, anxiety and depression. (AR 37-38.) Plaintiff's initial application and request for reconsideration were denied. (AR 115-120, 122-128.) Plaintiff requested a hearing before an ALJ. (AR 129-130.) On April 7, 2017, ALJ Michael A. Cabotaje conducted a hearing. (AR 58-81.) In a written decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act and its regulations and, therefore, was not entitled to SSDI benefits. (AR 32-52.) Plaintiff commenced this action for judicial review on October 16, 2018 pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). (Dkt. No. 1.)

## ADMINISTRATIVE RECORD

Plaintiff is 63 years old and resides in Eureka, California. (AR 62.) Plaintiff alleges that she has been unable to work since November 1, 2013 because of numerous injuries and depression. (AR 77.)

**I. Medical Evidence**

**A. Medical History: Treatment Records**

Plaintiff's physical problems started in 2013 when she injured her back lifting a heavy potted plant at work. (AR 253.) She suffers from chronic pain, depressed mood, asthma, and insomnia. (AR 242-243, 251.) Plaintiff had x-rays and MRIs taken of her spine that show degenerative disc disease of the lumbar spine, minimal spondylosis of the lumbar spine, and osteoarthritis. (AR 437-446.) In September 2014, Plaintiff underwent a branch nerve rhizotomy, a surgical procedure to sever nerve roots in the spinal cord. (AR 544-545, 602-603.) Additionally, Plaintiff has had numerous epidural injections, facet injections, and TENS units to relieve her back pain. (AR 385-388.) Plaintiff takes medications for pain and anxiety and depression. (AR 325, 252.)

**B. Medical Evaluations**

**1. Examining Physician Dr. Martin Smukler, M.D.**

Dr. Martin Smukler examined Plaintiff from April 2013 to April 2014. In May 2013, Dr. Smukler found that Plaintiff could return to full and unrestricted work four months after her injury. (AR 416-433.) Between May 2013 to October 2013, Plaintiff attended physical therapy sessions, had MRI examinations, and received facet joint injections and TENS units to relieve

pain.  (*Id.*)  From November 2013 to April 2014, Dr. Smukler stated that Plaintiff needed to be totally off from work.  (AR 388-415.)  The medical records indicate that Plaintiff had a limp and limited range of motion.  (*Id.*)  On April 1, 2014, Dr. Smukler found that Plaintiff's "gait was improved with only a slight limp favoring the left lower extremity" and that her "range of motion was markedly diminished at 20 degrees flexion, 15 degrees extension, 15 degrees right sidebending, and 10 degrees left sidebending."  (AR 388.)  However, Dr. Smukler stated that he "was not convinced that her pain is due to a desiccated, degenerative L4 disc."  (AR 391.)

### 2. Treating Physician Dr. James Zucherman, M.D.

Dr. James Zucherman treated Plaintiff from January 2014 to December 2014.  (AR 544-578.)  Dr. Zucherman's evaluation of Plaintiff's back range of motion indicated "loss of 75% forward flexion, with pain; loss of 75% extension, with pain; loss of 75% left side-bending, with pain; and loss of 75% right side-bending, with pain."  (AR 555.)  Additionally, Dr. Zucherman stated that the "EMG study shows nerve irritation and the patient has typical internal disc disruption syndrome with sitting intolerance being her biggest problem, and relief in lumbar extension, such as laying on her stomach."  (AR 553.)  Dr. Zucherman recommended physical therapy, facet joint injections, epidural injections, a medial branch block, a rhizotomy procedure, and a spinal cord stimulator.  (AR 544, 561.)  Dr. Zucherman concluded that Plaintiff's condition did not warrant surgical intervention and referred her to a pain management specialist.  (AR 561.)

### 3. Treating Physician Dr. Masami Hattori, M.D.

Dr. Masami Hattori treated Plaintiff from January 2014 to November 2014. (AR 580-603.)  Plaintiff was referred to Dr. Hattori as part of her treatment plan with Dr. Zucherman.  Dr. Hattori administered the facet joint injections, epidural injections, medial branch block surgery, and performed a rhizotomy procedure.  (*Id.*)  After each injection, Plaintiff reported temporary pain relief in her lower back, but the pain returned a few days after injection.  (AR 585, 588.)  Dr. Hattori found that Plaintiff had a "normal gait, no limp, and ambulated with no assistive devices."  (AR586.)

### 4. Consultative Physician Dr. Kristof Siciarz, M.D.

On January 5, 2015, Dr. Kristof Siciarz examined Plaintiff and determined that she can lift

1    and/or carry twenty pounds occasionally and ten pounds frequently; she has no limitations in

2    pushing and/or pulling; standing and/or walking is limited to two hours in an eight-hour workday;

3    sitting can be done without restrictions; and she does not need to periodically alternate sitting and

4    standing to relieve pain. (AR 609.) Further, Dr. Siciarz found that Plaintiff can climb ramps,

5    stairs, ladders, ropes and scaffolds occasionally as well as stoop, kneel, crouch and crawl

6    occasionally. (*Id.*)

7    **5. Treating Physician Dr. Martin Kernberg, M.D.**

8    On April 27, 2015, Dr. Martin Kernberg performed an MRI of Plaintiff's lumbar spine.

9    (AR 694-695.) The MRI results indicated that Plaintiff had "mild disc bulging, with flattening of

10   the anterior thecal sac, with mild hypertrophy of the ligamentum flavum, mild facet arthropathy,

11   with mild neuroforaminal narrowing" on the L2-3, L3-4, and L4-5 level. (AR 694.) Dr. Kernberg

12   concluded that Plaintiff had mild to moderate, multilevel, lumbar degenerative disease and was

13   unable to perform usual work. (AR 695-696.)

14   Dr. Kernberg also treated Plaintiff between November 2016 to February 2017 at the

15   Jefferson Pain Clinic. (AR 957-961, 969-974.) Dr. Kernberg's examinations of Plaintiff revealed

16   "acute and chronic lumbar pain" with her status as "totally temporarily disabled." (AR 961, 973.)

17   **6. Examining Physician Dr. Michael Ciepiela, M.D.**

18   On October 12, 2015, Dr. Michael Ciepiela reviewed Plaintiff's previous medical reports,

19   summarized the medical reports, and examined Plaintiff. (AR 1001-1037.) Dr. Ciepiela found

20   that Plaintiff had "positive EMG studies, positive MRI findings… It appears in my professional

21   opinion that surgery would be of benefit to her." (AR 1036.) Additionally, Dr. Ciepiela stated

22   that Plaintiff had the following work restrictions: no lifting, bending, stooping, twisting; being

23   allowed to sit and stand with comfort. (*Id.*) Finally, Dr. Ciepiela diagnosed Plaintiff with

24   "aberration of lumbar spondylosis, foraminal stenosis with onset of chronic radiculopathy, L4

25   through S1." (*Id.*)

26   **7. Examining Psychologist Dr. Michael Ramirez, Psy.D.**

27   In October 2015, Dr. Michael Ramirez performed a psychiatric consultation and

28   determined that Plaintiff has moderate persistent depressive disorder with anxious distress. (AR

5

704.)  Dr. Ramirez recommended that Plaintiff continue individual cognitive support

psychotherapy with pain management procedures because of her depression and anxiety related to

coping with her pain and functional losses.  (AR 703.)  Dr. Ramirez believed that continued

treatment with a therapist would ameliorate symptoms of pain, depression, and anxiety and assist

her in more effective life management skills.  (*Id.*)  Dr. Ramirez concluded that Plaintiff was

temporarily totally disabled due to her January 1, 2013 work-related injury.  (*Id.*)

### 8. Treating Family Nurse Practitioner Amanda James

On March 31, 2017, Amanda James FNP ("NP James") completed a medical source

statement, assessing Plaintiff's physical and mental limitations.  (AR 998-999.)  Plaintiff has been

seeing NP James as her primary care provider four to five times per year for the last twelve to

fourteen years.  (AR 80.)  NP James stated that Plaintiff would likely miss four or more days per

month due to chronic back pain or depression and anxiety; would be unable to concentrate on

work for 20% or more of the time due to chronic back pain or depression and anxiety; is only able

to stand and walk less than one-third of the workday; is only able to sit two hours per workday;

would need to lie down or recline for more than ten minutes every two hours to relieve pain after

standing; and is limited to lifting and carrying less than 5 pounds.  (AR 998-999.)

### 9. Non-Examining State Agency Physicians

Two non-examining state agency physicians reviewed the medical reports and concluded

that Plaintiff suffered from severe spine disorders, but that her condition was not severe enough to

prevent her from performing the type of work she previously performed as a medical receptionist.

(AR 82-94, 96-111.)

### C. Third Party Function Report

Steve Camilli, Plaintiff's husband, completed a third-party function report describing

Plaintiff's limitations.  (AR 233-241.)  Mr. Camilli reported that Plaintiff can fold laundry, do

chores, shop for groceries and household items, and manage her own money, but that Plaintiff

cannot do these activities frequently or for long periods of time because she experiences pain

while she does them.  (AR 235-236.)  He also reported that Plaintiff has difficulty lifting,

squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing.  (AR 238.)

6

**II. ALJ Hearing**

On April 7, 2017, Plaintiff appeared by video with her representative at her scheduled hearing before ALJ Michael A. Cabotaje at San Rafael, California. (AR 60.) Plaintiff and Vocational Expert ("VE") Gretchen Bakkenson both testified at the hearing. (*Id.*)

**A. Plaintiff's Testimony**

Plaintiff testified that she last worked in November 2013 following a back injury at work while moving a large plant. (AR 77, 253, 352.) She was a receptionist at a medical office from 1996 until 2013. (AR 219.) Plaintiff had to stop working because her back injury caused her to experience pain when sitting or standing for long periods of time. (AR 68.) As a result of her injury, she experiences lower back pain when sitting or standing for long periods of time and has to recline or lay on her stomach or back to relieve the pain. (AR 68.) She can sit for about fifteen to thirty minutes without having to stand or recline. (*Id.*) Standing in place is also painful. (AR 69.) Plaintiff can stand for about fifteen to twenty minutes without having to sit or recline. (*Id.*) She can lift a gallon of milk and carry a light bag of groceries. (AR 70-71.) Plaintiff is able to perform personal care, drive, and do some household chores such as grocery shopping and preparing a quick twenty-minute meal. (*Id.*) She spends most of her day in bed on her stomach or her back or in a recliner with her feet up. (AR 70.)

**B. Vocational Expert's Testimony**

At the ALJ's request, VE Gretchen Bakkenson, who reviewed Plaintiff's file and was present for Plaintiff's testimony, testified regarding Plaintiff's ability to perform her past work. The VE classified Plaintiff's past relevant work as medical receptionist (DOT 237.367-038), a sedentary job with an SVP of 4. (AR 66.)

The ALJ posed three hypotheticals to the VE to determine whether there were jobs existing in significant numbers in the national economy that Plaintiff could perform given her impairments. (*Id.*) The ALJ's first hypothetical considered an individual with Plaintiff's age, education, and background, along with the following limitations: standing and walking two hours in an eight hour day, sitting six hours in an eight hour day; and occasionally climbing, stooping, kneeling, crouching, and crawling. (*Id.*) The VE responded that such an individual could perform

Plaintiff's past work as a medical receptionist.  (AR 67.)

The ALJ's second hypothetical was an individual with the same limitations as in the first hypothetical, but with the additional limitation: simple, routine work.  (*Id.*)  The VE responded that such an individual could not perform Plaintiff's past work as a medical receptionist.  (*Id.*)  The ALJ asked whether there were any jobs in the local or national economy that that hypothetical individual could perform.  (*Id.*)  The VE responded that, with this additional limitation, there were no jobs the hypothetical individual could perform.  (*Id.*)

The ALJ's third hypothetical was identical to the first hypothetical—an individual of Plaintiff's age, education, and background, along with the following limitations: standing and walking two hours in an eight-hour day, sitting six hours in an eight hour day; and occasionally climbing, stooping, kneeling, crouching, and crawling.  (AR 78.)  The VE responded that such an individual could perform Plaintiff's past work as a medical receptionist.  (*Id.*)

Plaintiff's counsel then asked the VE a series of questions regarding four specific limitations.  (*Id.*)  First, Plaintiff's counsel asked whether an individual with the limited ability of sitting two hours in an eight hour day could perform the semiskilled job of medical receptionist.  (*Id.*)  The VE responded that an individual with that limitation could not perform the job of medical receptionist.  (*Id.*)  Second, Plaintiff's counsel asked whether an individual who would need to take breaks every 10 minutes away from their work station in order to walk around or recline, could perform the semiskilled job of a medical receptionist. (*Id.*)  The VE responded that an individual with that limitation could not perform the job of medical receptionist.  (AR 79.)  Third, Plaintiff's counsel asked whether an individual who would be absent from work four times each month could perform the job of medical receptionist.  (*Id.*)  The VE responded that an individual with that limitation could not perform the job of medical receptionist.  (*Id.*)  Fourth, Plaintiff's counsel asked whether an individual who would be off-task twenty percent of the day could perform the job of medical receptionist.  (*Id.*)  The VE responded that an individual with that limitation could not perform any job.  (*Id.*)

**III. ALJ's Findings**

In a May 18, 2017 written decision, the ALJ found Plaintiff not disabled under sections

216(i) and 223(d) of the Social Security Act, taking into consideration the testimony and evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 35-46); *see* 20 C. F. R. § 404.1520(a).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2013, prior to the application date of June 19, 2014. (AR 37.)

At step two, the ALJ found that Plaintiff had three severe impairments: (1) degenerative disc disease of lumbar spine; (2) osteoarthritis; and (3) obesity. (*Id.*)

At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1. (AR 40.) Specifically, the ALJ considered the criteria of listing 1.02, major dysfunction of a joint. (*Id.*) The ALJ also considered the criteria of listing 1.04, disorders of the spine. (AR 40-41.) The ALJ stated that the medical record did not contain any evidence that Plaintiff met either listings, citing to a medical assessment which stated that "she had a normal gait, no limp, and she ambulated without an assistive device." (*Id.*)

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, stating that she could lift ten pounds occasionally; sit six hours in an eight-hour workday; stand and/or walk up to two hours in an eight-hour work day; and occasionally climb, stoop, crouch and crawl. (*Id.*) In considering Plaintiff's symptoms and the objective medical evidence of these symptoms, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 41-43.) However, Plaintiff's testimony regarding the intensity, persistence, and limiting effects of these symptoms was not entirely credible. (AR 43.) The ALJ explained that Plaintiff's daily activities, including preparing a 20-minute meal, grocery shopping with a motorized cart, lifting a gallon of milk or carrying a light bag of groceries, are inconsistent with a totally disabling impairment. (AR 41.)

Regarding Plaintiff's physical limitations, the ALJ gave little weight to the opinions of Examining Physicians Dr. Martin Smukler and Dr. Martin Kernberg because Plaintiff had accommodations at her employment during that time. (AR 43.) The ALJ gave partial weight to

9

Consultative Physician Dr. Kristof Siciarz's opinion; however, the ALJ also stated that he "give[s] great weight to Dr. Siciarz's opinion to the extent that it shows that the claimant can perform at least the exertional demands of sedentary work, but not light work. A limitation to sedentary work is more consistent with the claimant's testimony." (AR 44.)

The ALJ gave partial weight to the opinion of the Non-Examining State Agency Consultant Dr. Pong because "it was consistent with the record showing [Plaintiff] had sitting, standing, and lifting limitations due to her obesity, osteoarthritis, and degenerative disc disease." (*Id.*) However, the ALJ stated that the opinion regarding the ability to lift and carry was inconsistent with the medical evidence and Plaintiff's testimony, holding that the consultant did not adequately evaluate Plaintiff's subjective complaints. (*Id.*) The ALJ did not state what weight he gave to the opinion of Non-Examining State Agency Consultant Dr. Dipsia. (*Id.*)

The ALJ gave partial weight to the medical source statement from Treating Nurse Practitioner Amanda James because "the limitations are too extreme and are inconsistent with the evidence" and Plaintiff testified she did not go to Ms. James for her back problems. (AR 45.) Additionally, the ALJ stated that "Ms. James is not an acceptable medical source and this opinion, standing alone, cannot constitute documentation of severe or disabling vocational limitations." (*Id.*) The ALJ also noted that Plaintiff "only saw Ms. James 4-5 times a year, albeit for 12-14 years." (*Id.*)

With respect to Plaintiff's mental limitations, the ALJ noted that a consultative psychological examiner physician Dr. Michael Ramirez stated that the Plaintiff was "temporarily totally disabled due to her work-related injury," and "strongly recommended individual cognitive support psychotherapy with medication management." (AR 39.) The ALJ gave little weight to Dr. Ramirez's opinion because Dr. Ramirez is a psychologist and his opinion regarded a physical impairment. Additionally, the ALJ stated that Dr. Ramirez did not make a connection between the mental impairment and her disability. (*Id.*) The ALJ also noted that the non-examining state agency consultants' statements that Plaintiff did not have a mental medically determinable impairment "did not adequately consider claimant's subjective complaints," and were inconsistent with the previous medical diagnoses of anxiety and depression. (*Id.*) The ALJ concluded that

10

Plaintiff's mental impairments were nonsevere because the examiner's findings were only mild and there was insufficient evidence of work-related limitations. (*Id.* at 39.)

At the fourth step, the ALJ found that Plaintiff was capable of performing past relevant work as a medical receptionist because such work did not require performance of work-related activities precluded by Plaintiff's RFC. (*Id.*)

Thus, the ALJ did not proceed to the fifth step and determined that Plaintiff was not "under a disability, as defined in the Social Security Act, from January 8, 2013, through the date of this decision."[2] (*Id.* (citing 20 C.F.R. 404.1520(f)).)

## DISCUSSION

Plaintiff contends that the ALJ committed four errors: (1) the ALJ failed to properly weigh the medical opinion evidence; (2) the ALJ improperly discredited Plaintiff's statements regarding her symptoms and resulting limitations; (3) the ALJ failed to properly analyze Listing 1.04 at step four; and (4) the ALJ "was not properly appointed under the Constitution and therefore lacked legal authority to hear and decide [her] case" (Dkt. No. 14 at 25).

### I. The ALJ's Consideration of Medical Opinion Evidence

#### A. Legal Standard

Courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examiner nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

---

[2] Plaintiff amended her alleged onset date to November 1, 2013 during her testimony. (AR 77.)

If a treating doctor's opinion is not contradicted by another doctor, it may be rejected by the ALJ only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (internal quotation marks and citations omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986), superseded by statute on other grounds as recognized in *Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. The opinions of nonexamining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Ultimately, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Thus, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014). In conducting its review, the ALJ must consider the entire record and cannot rely only on portions of the record while ignoring conflicting evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (finding error where "ALJ selectively relied on some entries in [plaintiff's] records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment.").

**B. Analysis**

Plaintiff challenges the ALJ's decision to give "partial weight" to the opinion of NP James. NP James found that Plaintiff would likely miss four or more days per month due to chronic back

pain or depression and anxiety; would be unable to concentrate on work for 20% or more of the time due to chronic back pain or depression and anxiety; was only able to stand and walk less than one-third of the workday; was only able to sit two hours per workday; would need to lie down or recline for more than ten minutes every two hours to relieve pain after standing; and was limited to lifting and carrying less than 5 pounds. (AR 998-999.) The ALJ gave only partial weight to this opinion because (1) NP James is an "unacceptable" medical source and did not prepare the assessment in consultation with a treating physician; (2) Plaintiff only saw NP James four to five times per year for the last twelve to fourteen years; and (3) Plaintiff testified that she did not see NP James for her back pain. (AR 45.) The ALJ's conclusion is not supported by germane reasons supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

First, the ALJ erred in disregarding NP James' medical report based on her being an "unacceptable" medical source and not preparing the assessment in consultation with a treating physician. An ALJ cannot simply disregard the opinions of medical providers such as a nurse practitioner simply because they are not within the definition of "acceptable medical sources." *See* 20 C.F.R. § 404.1527(b), (f); SSR 06-3P; *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) ("[t]he Social Security regulations provide an out-dated view that considers a nurse practitioner as an other source.") While those providers' opinions are not entitled to the same deference as other medical providers, an ALJ may give less deference to "other sources" only if the ALJ gives reasons germane to each witness for doing so. *Molina*, 674 F.3d at 1111. Further, the same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); 20 C.F.R. § 404.1527(f); SSR 06-3P. Those factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the doctor. *Id.* § 404.1527(c)(2)–(6). Under certain circumstances, the opinion of a treating provider who is not an acceptable medical source may be given greater weight than the opinion of a treating provider— for example, when the provider "has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is

13

more consistent with the evidence as a whole." *Revels*, 874 F.3d at 655 (quoting 20 C.F.R. § 404.1527(f)(1)). Further, an "unacceptable" medical source, such as a nurse practitioner, can be considered in the evaluation of severity and residual function capacity at step three—the second inquiry at step three of the sequential evaluation. 20 C.F.R. § 404.1527(e-f).

Here, the ALJ stated that he considered NP James' assessment for severity and effect on function, but then appeared to discount the report because NP James did not prepare the medical source statement in consultation with a treating physician. (AR 45.) That NP James did not consult a treating physician when preparing her medical source statement does not detract from her ability to attest to Plaintiff's limitations for *severity and her ability to work*. 20 C.F.R. § 404.1527(f). Thus, the ALJ's statements regarding the lack of supervision by a treating physician does not constitute a germane reason for discrediting NP James' assessment of Plaintiff's limitations for the purposes of determining severity and ability to work at step three.

Second, the ALJ discounted NP James' assessment because Plaintiff "only saw Ms. James 4-5 times per year, albeit for 12-14 years." (AR 45.) When evaluating a medical opinion, regardless of its status as an acceptable source or "other source," the ALJ must consider factors such as frequency and length of relationship. 20 C.F.R. § 404.1527(c)(2). It is unclear how Plaintiff visiting NP James four to five times each year weighs negatively on Plaintiff and NP James' medical relationship or detracts from NP James' medical opinion regarding Plaintiff's limitations. *See Popa*, 872 F.3d at 907 (finding that the nurse practitioner is a treating medical source and the ALJ's decision to disregard the nurse practitioner assessment makes little sense in light of the prominent role that the nurse practitioner played in plaintiff's treatment over the past two years). Additionally, "the primacy of [a treating source's] opinion derives from his superior *vantage*" developed through the frequency of visits and length of relationship. *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 n.1 (9th Cir. 2003). Here, NP James saw Plaintiff on a regular basis for twelve to fourteen years, providing a superior vantage for determining Plaintiff's limitations. Accordingly, NP James' continuing relationship with Plaintiff supports her assessment rather than diminishes it. Thus, the ALJ's decision to afford less weight to NP James' assessment based on the frequency of her visits with Plaintiff over an extended period of time is

not supported by substantial evidence.

Third, the ALJ discounted NP James' opinion because Plaintiff saw another physician for her back pain. (AR 45.) That Plaintiff saw a different physician for her back pain does not undermine NP James's conclusion based on her extensive experience with Plaintiff over their fourteen-year relationship that Plaintiff suffers from back pain. *Lester*, 81 F.3d at 833 ("[t]he treating physician's continuing relationship with the claimant makes [her] especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations"). Additionally, "an integral part of the treating physician's role is to take into account all the available information regarding all of [here] patient's impairments." *Id.* NP James provided assessments of Plaintiff's back pain in her regular examinations of Plaintiff, for example, stating in January 2015 that "[i]t is very hard for her to get off of the table due to her back pain. When she walks it obviously affect[s] her," and, in April 2015, that "[s]he is being seen for her back pain as a workers comp issue. She obviously is very compromised and has a lot of trouble walking or even standing. It is even uncomfortable to sit." (AR 929, 935.) NP James' continuing relationship with Plaintiff as her treating care provider qualified her to provide an overall conclusion as to functional capacities and limitations. *Lester*, 81 F.3d at 833. Thus, the ALJ's discounting of NP James' opinion because Plaintiff saw another physician for her back pain is not a germane reason supported by substantial evidence.

The ALJ also failed to provide germane reasons for discrediting NP James' assessment of Plaintiff's physical and mental limitations when he concluded that Plaintiff's limitations set forth in NP James' assessment "were too extreme and are inconsistent with the evidence" and that "the evidence does not support depression and anxiety limitations." (AR 45.) *Molina*, 674 F.3d at 1111 The ALJ does not cite any specific medical evidence or reports that contradict the limitations that NP James' attests to in her medical source statement. *See Popa*, 872 F.3d at 907 (concluding that inconsistency with other medical evidence in the record was not a germane reason to reject a nurse practitioner's opinion when the ALJ failed to explain how the other evidence was inconsistent with the nurse practitioner's opinion). Thus, the ALJ failed to provide a germane

reason to discredit NP James' assessment when he did not cite specific medical evidence from the record that contradicted NP James' assessment.

While the Commissioner argues that the NP James' opinion is contradicted by that of the other treating physicians, the Commissioner's post hoc review of the medical evidence and citation to portions of the record which suggest normal findings is unavailing. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). "We are constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The ALJ's entire section discussing NP James assessment is void of any references to other medical findings. *See Popa*, 872 F.3d at 907. The ALJ does not make any references to the medical record or other conflicting physician's medical findings demonstrating how these limitations are "extreme" and "inconsistent." *Id.* Accordingly, the ALJ failed to offer germane reasons supported by substantial evidence for rejecting NP James' assessment of Plaintiff's limitations.[3]//

**II. The ALJ's Adverse Credibility Finding**

---

[3] To the extent that the ALJ did rely on NP James' opinion in limiting Plaintiff to sedentary work, NP James' opinion does not support this conclusion. (AR 45 (finding that NP James' medical source statement "supports that the [Plaintiff] could do the standing, walking, and sitting of sedentary work.") NP James' medical source statement concludes that Plaintiff can stand and walk less than one-third of the workday, sit for two hours in a workday, and can lift and carry less than five pounds. (AR 998-999.) Under the regulation, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567. However, "[i]ndividuals working in a 'sedentary' work environment who 'must alternate periods of sitting and standing' are 'functionally not capable of doing ... the prolonged sitting contemplated in the definition of sedentary work." *Fraga v. Sullivan*, 828 F. Supp. 737, 740 (N.D. Cal. 1993) (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1457 (9th Cir.1984)). NP James' assessment concluded that Plaintiff must alternate periods of sitting, standing, and reclining to relieve her back pain. Social Security Ruling 83-10 further explains that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (describing requirements for "full range" of sedentary work). Thus, the ALJ's conclusion that NP James' assessment supports a finding of sedentary work is not supported by substantial evidence.

**A. Legal Standard**

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citation omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 924 (9th Cir. 2002). Thus, "general findings are an insufficient basis to support an adverse credibility determination." *Holohan*, 246 F.3d at 1208. The ALJ must instead "state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

**B. Analysis**

Applying the two-step analysis, the ALJ first found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 42.) The ALJ next determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms was "not entirely consistent with the medical evidence and other evidence in the record." (AR 42.) Because Plaintiff met the first part of the test, the ALJ could reject Plaintiff's testimony regarding the severity of her symptoms only if the record contained evidence of malingering, or "by offering specific, clear and convincing reasons for doing so." *See Lingenfelter*, 504 F.3d at 1036. The ALJ failed to provide specific, clear and convincing reasons for his credibility determination.

First, while the ALJ first found that Plaintiff's reports of back pain were consistent with the record, later in the same paragraph he found that "some of her reports were inconsistent, and she showed improvement." (AR 43.) However, the record the ALJ cites in support of this inconsistency does not support his conclusion. (AR 43 citing Exhibit 8F 2, 4 (AR 544-546).) The

17

record is a request from Plaintiff's physician Dr. Zucherman asking that Plaintiff be considered for a facet rhizotomy because the caudal epidural injections left her symptoms "essentially unchanged" and she was in constant pain and unable to work or function. (AR 544-545.) While the record elsewhere notes that Plaintiff self-reported that she could walk 1/2 a mile, on that same page she says her pain is worsening, her pain prevents her from sleeping at all, and the pain is at its worst with sitting, standing, and bending forward. (AR 546.) Likewise, although the record reflects that Plaintiff had brief instances of improvement, the record also consistently indicates that her back pain returned. For example, Plaintiff's treating records with Dr. Smukler reflect that Plaintiff reported in September 2013, "she had an excellent response for approximately one week and then relapsed. [But] [s]he has been getting progressively worse since then," (AR 417); in December 2013, Plaintiff stated that "she finds heat, ibuprofen, and TENS unit somewhat helpful," but "there has been no improvement," (AR 402); in January 2014, "[a]fter injection she had 100% pain relief for several hours but then the pain returned during the evening and night," (AR 396); in February 2014, Plaintiff stated "that the pain was actually worse encompassing a larger area of her low back and worsening intensity," (AR 394); in August 2014, Plaintiff "did respond well to the lumbar medical branch block, which provided almost full pain relief lasting two days. . . but again this provided only couple days of relief," (AR 590); in October 2014, Plaintiff stated "she had no pain few days afterwards the procedure. Now she feels it is worse," (AR 585); in January 2015, Plaintiff stated that she "received epidurals with only temporary relief and since then the pain has returned," (AR 605); in February 2015, Plaintiff stated "[s]he had temporary relief from a number of interventions. . . that helped part of her pain, but not the rest," (AR 837); in April 2015, Plaintiff stated that she found relief with lying on her stomach, TENS units, and pain medications, but her lower back pain was "[g]radually worsening, increasing in frequency and intensity," (AR 697); in December 2015, Plaintiff stated "there are days pain is unbearable. . . at worse 10/10" and "with pain meds on board 6/10 but only short relief," (AR 696); and in January and February 2017, the medical records indicate that Plaintiff experienced "persistent symptoms" of lumbar pain from January 2016 to February 2017 that were "[g]radually worsening, increasing in frequency and intensity." (AR 969-970, 976-977.) The ALJ thus erred

in cherry-picking a few examples among the dozens of treatment records to support his conclusion while ignoring the contradictory evidence. *See Garrison*, 759 F.3d at 1017 ("[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). The ALJ's credibility determination was thus in error because he made improper inferences regarding capacity to work from Plaintiff's improved functioning in limited circumstances and isolated instances of improvement in Plaintiff's medical record.

Second, the ALJ found that Plaintiff's activities of daily living did not support her subjective reports of pain. The ALJ cited Plaintiff's testimony of her ability to go to Costco and use a motorized cart, to lift a gallon of milk or carry a light bag of groceries, to do some chores, and to make a twenty-minute dinner as evidence for rejecting her subjective complaints of back pain. (AR 41.) But "the ALJ failed to specify how plaintiff's ability to [do these things] would translate into an ability to perform gainful employment." *See White v. Colvin*, No. 13-1626-PLA, 2014 WL 4187823, at *7 (C.D. Cal. Aug. 21, 2014). Similarly, the ALJ does not explain why Plaintiff's ability to drive thirty minutes, housekeep for thirty minutes, walk for thirty minutes, be in bed for two hours, and sit on the couch or recliner for six hours, contradicts her testimony regarding back pain. (AR 43 (citing AR 570.)). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Further, the daily activities Plaintiff could perform are not readily "transferrable to a work environment." *Ghanim v. Colvin*, 763 F.3d 1154, 1156 (9th Cir. 2014) (internal quotation marks omitted); *see also Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment …"). House chores, cooking simple meals, lifting a gallon of milk, and short-term driving, as well as occasional shopping outside the home, are not

19

similar to typical work responsibilities. *See, e.g.*, *Gallant*, 753 F.2d at 1453 (ordering award of benefits for leg and back pain despite claimant's daily activities of cooking meals and washing dishes). The Court notes that even though Plaintiff was performing these tasks, she was likely not doing them with the consistency and persistence that a work environment requires. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest."). Thus, the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective reports of pain based on Plaintiff's activities of daily living.

In sum, the ALJ's adverse credibility finding does not satisfy the "demanding" "clear and convincing standard." *Garrison*, 759 F.3d at 1013.

### III. The ALJ's Evaluation of Plaintiff's Conditions Under Listing 1.04

#### A. Legal Standard

At step three of the sequential evaluation, the ALJ must determine whether a plaintiff's impairments meet or are equal in severity to the listing requirements. Even if a plaintiff's physical impairment does not meet the criteria specified in the listings, she must be found disabled if her condition "is equal to" a listed impairment. 20 C.F.R. § 404.1520(d). In evaluating a plaintiff with more than one impairment, the Commissioner must consider "whether the combination of [her] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a); *see also Sprague v. Bowen,* 812 F.2d 1226, 1231 (9th Cir.1987). The claimant's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester*, 81 F.3d 821 at 829 (quoting *Beecher v. Heckler,* 756 F.2d 693, 694–95 (9th Cir.1985)). In determining whether the claimant's combination of impairments equals a particular listing, the Commissioner must consider whether her "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." 20 C.F.R. § 404.1529(d)(3). "[I]n determining whether a [Plaintiff] equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990).

#### B. Analysis

First, Plaintiff contends that her combined impairments of degenerative disc disease and obesity are equal in severity to those specified in Listing 1.04. (Dkt. 14 at 19.) Listing 1.04 requires a spinal disorder resulting in a compromise of a nerve root or the spinal cord, which must be documented by:

"A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Plaintiff insists that she meets this listing based on MRI findings in April 2015 of a disc bulge at the L5-S1 level that caused mild to moderate neuroforaminal stenosis with neural impingement on the left (AR 649-59); EMG studies in January 2014 confirming evidence of chronic radiculopathy in the lower extremities at the left L4 and L5 with active irritation (AR 356-58); positive findings of limited lumbar motion (AR 388, 398, 400, 550, 555, 573, 577, 774, 1035); muscle weakness with reflex or sensory loss (AR 400, 550, 556, 574, 577, 627, 773); and positive straight leg raising tests (AR 550, 556, 577).

The Commissioner contends that Plaintiff cannot raise the argument of meeting or equaling Listing 1.04 because "at no point in the administrative proceedings did Plaintiff assert she satisfied Listing 1.04." (Dkt. No. 15 at 8.) When a claimant fails to present a theory, plausible or otherwise, as to how the combination of their impairments equals to a listing, the ALJ need not explain his conclusion. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); *Pruitt v. Comm'r*, 612 Fed. App'x. 891, 893 (9th Cir. 2015). Plaintiff did not assert that she met Listing 1.04 or that the combination of her impairments equaled to Listing 1.04 in her prehearing brief nor at the hearing. Further, Plaintiff also failed to raise any issue regarding the ALJ's listing determination to

21

the Appeals Council. (AR 322-324.) To preserve issues on appeal, claimants "must raise all issues and evidence at their administrative hearings" when represented by counsel. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999). Because Plaintiff was represented by counsel during the administrative proceedings, she waived any contention that the ALJ failed to consider whether the combination of impairments met or equaled Listing 1.04 by failing to raise the issue before either the ALJ or the Appeals Council. *See Harris v. Berryhill*, 738 F. App'x 529, 531 (9th Cir. 2018) (holding that plaintiff waived challenge to Listing when failing to raise it to the ALJ or Appeals Council).

Thus, Plaintiff waived the argument that she met or equaled Listing 1.04 for purposes of federal court review.

**IV. Whether the ALJ Was Properly Appointed Under the Constitution**

Finally, Plaintiff contends that the ALJ was not properly appointed under the Constitution and therefore lacked legal authority to hear and decide her case under *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018). The Supreme Court in *Lucia* held that ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States," subject to the Appointments Clause of Article II of the United States Constitution. *Lucia*, 138 S. Ct. 2055. *Lucia* also held that the appropriate remedy to a *timely* challenge "before the Commission" was a new hearing before a different ALJ that was properly appointed. *Id.* at 2055.

Plaintiff failed to make a timely challenge to the validity of the ALJ appointment. "To the extent *Lucia* applies to Social Security ALJs, plaintiff forfeited the issue by failing to raise it during [her] administrative proceedings." *Hugues v. Berryhill*, No. CV 17-3892-JPR, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018); *Samuel F. v. Berryhill*, Case No. CV 17-7068-JPR, 2018 WL 5984187, at *2 n.6 (C.D. Cal. Nov. 14, 2018) (same); *Salmeron v. Berryhill*, Case No. CV 17-3927-JPR, 2018 WL 4998107, at *3 n.5 (C.D. Cal. Oct. 15, 2018) (same); *Allen v. Berryhill*, No. 17-CV-03414-HSG, 2019 WL 1438845, at *13 (N.D. Cal. Mar. 31, 2019) (dismissing plaintiff's claim challenging the validity of the ALJ appointment as untimely because did not raise it during administrative proceedings); *see generally Kabani & Co. v. SEC*, 733 F. App'x 918, 919 (9th Cir. 2018) (rejecting *Lucia* challenge because plaintiff did not raise it during

1 administrative proceedings).

2  Plaintiff contends that she can raise this issue for the first time with the District Court

3 pursuant to the Supreme Court explanation that claimants need not "exhaust issues in a request for

4 review by the Appeals Council in order to preserve judicial review of those issues." *Sims v. Apfel*,

5 530 U.S. 103, 111 (2000). However, the Supreme Court explicitly noted that "[w]hether a

6 claimant must exhaust issues before the ALJ is not before us." *Id*. at 2016. While the Ninth

7 Circuit has not directly spoken on the issue of preserving challenges under *Lucia* in the social

8 security context, it has confirmed the general proposition that a social security claimant must

9 exhaust issues before the ALJ to preserve judicial review. *Shaibi v. Berryhill*, 883 F.3d 1102,

10 1109 (9th Cir. 2017) ("In light of the [Supreme] Court's express limitation on its holding in *Sims*,

11 we cannot say that that holding is 'clearly irreconcilable' with our decision in *Meanel*, and *Meanel*

12 therefore remains binding on this court with respect to proceedings before an ALJ.")

13  *Meanel*'s holding that claimants represented by counsel must raise all issues at their

14 administrative hearings to preserve issues on appeal remains binding on this Court. 172 F.3d at

15 1115. Plaintiff asserted that the ALJ was not properly appointed under the Constitution for the

16 first time in this currently pending action before the Court. (Dkt. No. 15 at 21.) Plaintiff did not

17 assert that the ALJ was improperly appointed at any time during the administrative proceedings

18 including in the prehearing briefs, at the hearing, or to the Appeals Council. (AR 58-81, 317-321,

19 322-324.) Thus, Plaintiff forfeited her claim that the ALJ was not properly appointed under the

20 Constitution for purposes of federal court review.

21 **V. Harmless Error**

22  Given that the ALJ's consideration of the medical evidence and adverse credibility finding

23 are not supported by substantial evidence, the ALJ's decision cannot stand. Because these errors

24 go to the heart of the disability determination, they are not harmless. *See Treichler v. Comm'r of*

25 *Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is

26 inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably

27 be discerned, even if the agency explains its decision with less than ideal clarity.") (internal

28 quotation marks and citations omitted); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056

(9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").  The Court cannot say that the ALJ's errors in evaluating the medical evidence and adverse credibility would not have altered the ALJ's RFC determination and thus the ultimate disability determination.  As discussed below, this case must be remanded.

## VI. Remand or Credit-As-True

Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.  Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, *id.*, and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12–CV6179, 2014 WL 957025, at *14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595); *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) ("where [...] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency") (citing *Treichler*, 775 F.3d at 1105.)  It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon*, 880 F.3d at 1047.

Such rare circumstances exist here. As to the first prong, the record is fully developed. It spans nearly a thousand pages and contains treatment notes from dozens of doctor visits during the insured period as well as medical history dating back as far as 2004.  Although the ALJ insisted Plaintiff experienced episodes of improvement, the record reflects Plaintiff's ongoing back pain and attempts to obtain treatment.  The record also reflects Plaintiff's testimony before the ALJ and

24

her responses to questionnaires about her physical and mental limitations, and medical opinions of treating physicians Dr. Smukler, Dr. Kernberg, and Dr. Zucherman—all of which corroborate the disabling nature of Plaintiff's impairments.

The second and third prongs of the credit-as-true standard are also satisfied. The ALJ failed to provide legally sufficient reasons for rejecting the informed medical opinion of Plaintiff's treating NP James and instead improperly gave great weight to the opinions of the state Agency nontreating, nonexamining medical consultants. When credited as true, NP James' opinion establishes that Plaintiff is disabled because the VE testified that somebody with her limitations regarding sitting, standing, attention and concentration would be unemployable. (AR 78-79.) In addition, NP James' opinion, if credited as true, directly contradicts the ALJ's findings regarding Plaintiff's ability to perform sedentary work. (AR 45, 998-999.) Thus, the improperly rejected evidence establishes that Plaintiff is entitled to benefits. *See Garrison*, 759 F.3d at 1022; *Lingenfelter*, 504 F.3d at 1041 n.12 (9th Cir. 2007); *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error."); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017) (applying credit-as-true where: (1) ALJ failed to provide legally sufficient reasons to discredit treating doctor's opinion; (2) treating opinion was supported by evidence; (3) VE testified that an individual of similar status and impairment was unable to work full-time; and (4) plaintiff's testimony was not inconsistent with the record).

The Commissioner insists that remand for an award of benefits is improper because Plaintiff "relies on her own subjective claims" and the medical record "consistently revealed normal levels of functioning consistent with Plaintiff's restrictive RFC." (Dkt. No. 15 at 23.) However, as discussed *supra*, neither of these arguments is supported by the record. "[T]he credit-as-true rule foreclose[s] the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a useful purpose under the first part of credit-as-true analysis." *See Garrison*, 759 F.3d at 1021 (citing *Benecke*, 379 F.3d at 595) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") In sum, there is no serious doubt based on the

Court's evaluation of the record as a whole that Plaintiff is disabled within the meaning of the Social Security Act.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED and Defendant's cross-motion is DENIED. The Court VACATES the ALJ's final decision and REMANDS for an award of benefits.

This Order disposes of Docket Nos. 14 and 15.

**IT IS SO ORDERED.**

Dated: July 29, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge